IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

O'NEIL DEPRIEST SWANSON, II and
DIANNE SWANSON,

        CASE NO: 2:23-cv-10584

**Plaintiffs,**        HON:

v.

ROBERT MICHAEL HAYES,
DANA NESSEL and MICHIGAN
DEPARTMENT OF LICENSING AND REGULATORY
AFFAIRS (LARA),

    **Defendants**

___

## VERIFIED COMPLAINT

There is no other pending or unresolved
civil action arising out of the transaction
or occurrences alleged in this complaint
pending in this court, nor has any such action been
previously filed and dismissed after having
been assigned to a Judge.

/s/  O'Neil Depriest Swanson, II
O'NEIL DEPRIEST SWANSON, II
Plaintiff

NOW COME Plaintiffs, O'Neil Depriest Swanson, II and Dianne Swanson, through their counsel, and for their Complaint state onto this Honorable Court as follows:

1. That at all times material hereto Plaintiffs, O'Neil Depriest II Swanson and Dianne Swanson, resided in West Bloomfield and are African American and husband and wife.

2. That Defendant, Robert Michael Hayes, was at all times material hereto a licensed attorney, engaged and practicing as an Assistant Attorney General and the lead counsel involved in the action entitled *State of Michigan v O'Neil Swanson*, Case Number 21-FB-

1774, a matter which pended in the 14$^B$ District Court, County of Washtenaw, State of Michigan.

3. That at all times material hereto, Defendant Dana Nessel ("Nessel") was the duly elected Attorney General of the State of Michigan, charged and tasked with overseeing criminal investigations and criminal prosecutions, specifically involving Plaintiff herein, O'Neil Swanson. In her official capacity, Nessel initiated several investigations against Plaintiff Swanson and unsuccessfully pursued him both administratively as well as criminally, and further engaged in a practice of public commentary against Swanson, contrary to the Disciplinary Rules regarding such prosecutorial comment.

4. Department of Licensing and Regulatory Affairs ('LARA"), is a government entity existing under and by virtue of the laws of the State of Michigan, having a principal place of business located in the City of Lansing, County of Ingham, State of Michigan; LARA employs investigative personnel who were involved in the underlying criminal action and administrative actions against Plaintiff Swanson.

5. That jurisdiction is vested upon this Court pursuant to 42 USC 1983; this Honorable Court likewise enjoys pendent jurisdiction over Plaintiff's State Claims.

## I. FACTUAL BACKGROUND

6. That Plaintiff Swanson was charged with the crime of failing to timely dispose of the body of Diane Harris within the 180-day period afforded under MCL 750.160(c) (a ten-year felony).

7. That at the time scheduled for the Preliminary Examination on the criminal matter, which pended before the Honorable Cedric Simpson, Defendants attempted to add five additional Counts of mutilating a body against Swanson.

8. That District Court Judge Simpson, after reviewing the submissions of the parties and hearing testimony and oral argument, dismissed all Counts against Swanson, finding that there was absolutely no probable cause that Defendant committed any crime. Judge Simpson further found that there was no possibility that Plaintiff Swanson could have committed the crimes charged based on the clear and explicit language of the operating statutory scheme. Judge Simpson further opined that it appeared that as through the charges had been manufactured and that Defendant was actually targeted because they did not like him.

9. That the Prosecutor's underlying case arose from the alleged failure to properly handle the remains of Diane Harris, who died on or about December 11, 2018, according to her original death certificate.

10. That the funeral provider at the time was John Ozslewski, a white male, from Compassion Funeral Home.

11. That decedent's family initially intended that Diane Harris's body be disposed via burial at Gethsemane Cemetery in Detroit; however, this never occurred.

12. Approximately 180-days later, on or about June 11, 2019, Ms. Harris' remains had still not been buried nor cremated; Defendant Prosecutors never presented an explanation as to why Compassion Funeral Home and/or John Ozslewski never completed final disposition; significantly, John Ozslewski, who had possession of the remains in excess of 180 days, was never investigated nor charged with a crime.

13. Approximately three years later, on or about September 21, 2021, the death certificate of Diane Harris was amended to provide for a method of disposition by cremation in a Livonia, Michigan crematory.

14. That prior to charging Plaintiff Swanson, it was undisputed that Compassion Funeral Home, John Ozslewski and Bishop Ruffin had agreed to provide funeral director services for Diane Harris; indeed, the casket for Diane Harris was delivered to Tri-County cremation on March 25, 2019, from Compassion Funeral Home, which was actually owned at that time, by Mary Fancher, with Bill Hudson being the General Manager (both of them are white).

15. It was clear to Defendants prior to them charging Plaintiff Swanson, at all relevant times, Compassion Funeral Home was unable to provide Bill Hudson and Tri-County Cremation the requisite permit for Diane Harris from the Medical Examiner's Office; as such Tri-County was legally unable to cremate Diane Harris according to Michigan Law.

16. That due to these issues on or about September 18, 2019, Bill Hudson filed a Complaint with the State of Michigan (LARA) regarding the body of Diane Harris (documents of which Defendants were all well aware).

17. That prior to charging Plaintiff Swanson, Defendants were well aware that approximately 180 days after the drop off of Harris' body, on September 25, 2019, the Harris remains had not been cremated by Tri-County and/or its management team, notwithstanding the fact that they had agreed to provide cremation services (again, all of these individuals are white).

18. That LARA activity logs provided at the Preliminary Exam clearly confirmed Complaints having been filed by Bill Hudson detailing numerous attempts to seek the proper documentation to cremate Diane Harris and further identified Bishop Ruffin and John Ozslewski as individuals involved in that endeavor.

19. That prior to charging Plaintiff, Defendants were well aware that as of September 25, 2019, 180 days after receiving the remains, there was no cremation at Tri-County Cremation by either Fancher or Hudson as required by the same statutory scheme under which Defendant Swanson was eventually charged.

20. That on or about December 19, 2019, LARA generated a report indicating that Bill Hudson from Tri-County Cremation Services called to let the Department know that money had been brought by a family member, and that the family member would reach out to a mortuary science licensee to assist with getting the appropriate paperwork for decedent's remains to be cremated.

21. That on or about June 1, 2020, Plaintiff Swanson, for the first time, obtained a membership interest in an LLC that purchased Tri-County Cremation; while this Agreement was never consummated, this was still the first time that Plaintiff Swanson had become at all involved with the Diane Harris situation, which he essentially inherited from white predecessors.

22. That on or about December 7, 2020, LARA created documents confirming that Diane Harris had been on site at Tri-County for 727 days after her death. (Well past the "180 day" rule provided by Michigan Statute).

23. That sometime around May 26, 2021, Ben Parker, observed that Diane Harris' remains had been on site at Tri-County 897 days after her death, and discovered that Plaintiff Swanson had a recently established interest in the Crematory.

24. That on or about June 3, 2021, Agent Menard of LARA, seized the remains of Diane Harris and issued a search warrant for Tri-County, some nine days after LARA first learned that Plaintiff Swanson had an interest in the Crematory.

25. That on or about September 28, 2021, 1,022 days from Diane Harris' death, only Plaintiff Swanson was charged with "failing to dispose of Diane Harris' remains within the 180 days" required by Michigan Statute. (a ten year felony); Plaintiff was arrested, processed, and then excoriated by the media by virtue of Nessels' improper commentary which was designed to grab headlines to advance her own political ambitions.

26. Plaintiff posted bond and retained counsel to represent his interests; a review of discovery provided clearly demonstrated that the criminal complaint was factually bogus and simply a racially motivated smear campaign.

27. That Defendant's malice against Plaintiff was clearly reflected in the attempt to add on even more charges at the close of the proofs of the preliminary examination, notwithstanding the fact that the medical examiner's review of the bodies that were on site, were all in various stages of decomposition, the changes being consistent with the timeframe since death in conjunction with environmental factors and that the external examination of the decedents did not demonstrate any conclusive evidence of physical or chemical mutilation; the Defendant's nonetheless, sought to amend charges and add five more 10-year felonies for "body mutilation".

28. That after completion of all testimony, review of Trial briefs and the hearing of oral argument, The District Judge J. Cedric Simpson, on or about November 15, 2021, dismissed the entirety of the charges against Plaintiff Swanson as totally lacking in probable cause; significantly, the Court found as follows:

...

> Under the facts of this case, it is an impossibility that he (Swanson) did anything that would violate the statute regarding the five bodies in the requested added counts that would either constitute mutilation or

defacement of these bodies. PE transcript page 32. That that that? ellipses same black hole and so the court doesn't find that the people would have sustained their burden as regards the additional five charges and will not bind that offended over on those charges… and so the court doesn't find that the people would have sustained their burden as it regards the additional five charges and will not bind the Defendant over on those charges.

**(PE Transcript P. 32)**

. . .

…and so the court doesn't find that the people would have sustained their burden as it regards the additional five charges and will not bind the Defendant over on those charges.

**(PE Transcript P. 33)**

. . .

The state's theory is that the agreement, and then what Mr. Swanson did, constituted an agreement for the purposes of the statute period. This court vehemently disagrees. And we believe that there is no agreement by Mr. Swanson to provide for the final disposition of Ms. Harris…I disagree with the People's position that somebody is required to then do something that is up and beyond what would be their ability or creating an inability to obtain the necessary authorizations and to impose upon people in the absence of some statutory language otherwise seems extreme…That once that body was transported to Tri County in March 2019, the necessary documentation didn't come along. At that point, Mr. Swanson has nothing to do with the disposal of the body or disposition.

. . .

And this is the most troubling aspect from my standpoint, but further when individuals in the state are contacted, and that being specifically those at LARA, to either offer guidance or something along those lines, to individuals as to what they should do, or to follow some other type of practice or to do whatever, LARA, their response is deafening in this Court's mind. LARA let this linger on and on, until again, all of a sudden there is somebody who was in front of them, who they may not like or may have issues with. And I believe that to be the case, because I don't know why, and no one could give me an explanation. When directly asked on the record as to why the licensure was even just remaining in the pending status…LARA could have stopped this. When you look at

> the dates, had they taken the action that they ultimately took, could have stopped this even before the point at which time Mr. Swanson would even be accused of a crime, but did not. The State cannot allow conditions to exist for the creation of a crime against someone where they have the ability and the authority to act. And that is what this Court's firm belief is what happened in this case…I don't believe that this Court or any Court should play party to an action where crimes, I don't want to say manufactured, but where crimes were, where conditions are allowed to exist, where the State could intervene, did not, and then attempted to try to charge someone criminally.

**(PE Transcript P. 38)**

…

## COUNT I – MALICIOUS PROSECUTION, FALSE ARREST AND CONSPIRACY UNDER 42 USC 1983, et seq

29. Plaintiffs hereby restate and reallege paragraphs 1-28 as though fully set forth herein.

30. That a malicious prosecution claim under Michigan Law has the following requisite elements:

    a. That prior proceedings terminated in favor of the Plaintiff.

    b. An absence of probable cause for those proceedings;

    c. Malice, defined as a purpose other than that of securing the proper adjudication of the claim;

    d. A special injury that flows directly from the prior proceedings.

31. Further, absolute immunity does not shelter a prosecutors conduct unrelated to advocacy, particularly acts deemed investigative or administrative rather than prosecutorial. *Van de Kamp v Goldstein*, 555 US 335; (2009).

32. An action for malicious prosecution properly lies where an Assistant Attorney General knowingly swears to a false fact in a complaint, without which there is no probably cause. *King v. Arbic*, 159 Mich. App. 452, (Mich. Ct. App. 1987).

33. Just a standard claim under 42 USC 1985(3), Plaintiff needs only prove the existence of some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirator's action. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790 (1971).

34. That in order to sustain a cause of action against the State of Michigan under a §83 Claim, Plaintiff must only prove that an action pursuant to official municipal policy or some nature caused a constitutional tort. *Collins v. Harker Heights*, 503 U.S. 115, (1992).

35. It is clear that Defendant Nessel not only was involved in formally approving from an official decision-making channel, the prosecution of Plaintiff but she additionally saw fit to publicly comment and called a press conference to defame Plaintiff in furtherance of her own political ambitions and contrary to the limitation on prosecutorial comment contained in the Disciplinary Rules.

36. A policy and custom may be inferred from the acts or omissions of a municipalities supervisory officials seriously enough to amount to gross negligence or deliberate indifference as to the individuals constitutional rights. *Villante v. Dept of Corrections of Cty of N.Y*, 586 F.2d 516, 519 (2d Cir. 1986).

37. It can be clearly shown that Defendant Nessel, as a supervisor, encouraged the specific incident of misconduct or in some other way directly participated in it. As such, Nessel, as supervising official, at least implicitly authorized or approved or knowingly acquiesced in the unconstitutional conduct of her offending subordinate. *Smith v. Heath*, 691 F.2d 220 (6th Cir. 1982).

38. That it was clear to the District Court Judge Simpson, who reviewed and heard testimony and thereafter dismissed the charges, that Plaintiff was improperly prosecuted and

arrested based upon a variety of independent violations of a right protected by the Constitution, see *Albright v. Oliver*, 510 U.S. 114 (1994).

39. That it is clear from the underlying record that both Defendant Nessel and Robert Michael Hayes were well aware that if any criminal activity was afoot, it related to the prior crematories owner, a white Defendant, who possessed the remains here at issue for well in excess of 700 days prior to Swanson even becoming involved in the facility.

40. That in furtherance of their conspiratorial goal of wrongfully punishing Swanson, Defendants saw fit to add additional bogus charges of body mutilation where in fact they were already well aware of the facts and circumstances which likewise made these particular additional claims bogus.

41. That as a direct and proximate result of Defendants actions which constitute false arrest, malicious prosecution and conspiracy, Plaintiff sustained significant damages including but not limited to a loss of his reputation, monetary loss, emotional upset, and all other elements of psychological damages as recognized under the Standard Michigan Jury Instructions which are hereby incorporated by reference.

42. That Plaintiff Dianne Swanson has an independent action for the loss of consortium as occasioned by the primary tort offense against her husband, O'Neil Swanson, is therefore also entitled to secure just and proper recompense for her loss as recognized and acknowledged under Michigan Law.

WHEREFORE Plaintiffs respectfully request this Honorable Court see fit to return a judgment in favor of Plaintiffs and against the Defendants individually and collectively in the amount of $10 million dollars along with all costs, interests and attorney fees afforded under Michigan Law including exemplary and punitive damages.

## COUNT II – VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

43. Plaintiffs hereby restate and reallege paragraphs 1-42 as though fully set forth herein.

44. That Plaintiff Swanson is an individual protected under the Elliott Larsen Civil Rights Act, specifically MSA 37.2102 and as such is protected against any form of discrimination based upon his race, color, and national origin with respect to his opportunity to obtain and maintain professional employment through the crematory in which he secured a vested and protected interest.

45. That in furtherance of their conspiracy to discriminate and punish Plaintiff, Defendant saw fit to padlock his crematory which was then an ongoing concern causing extensive financial injury as well as injury to Plaintiff's reputation and standing in the community.

46. That Defendant Nessel's improper press conference which she calls merely to advance her own political interests was clearly designed to undermine Plaintiff's standing in the community, besmirch him before the public and otherwise contaminate and/or taint his ability to secure fair justice under the Law.

47. That Nessel's commentary in this regard was prohibited pursuant to the limitations on prosecutorial comment contained in the Disciplinary Rules of the State of Michigan.

48. That Nessel's conduct was deliberative and designed specifically to undermine Plaintiff's credibility, standing in the community, and impose on him additional financial hardships in furtherance of her discriminatory motive.

49. That as a direct and proximate cause of Defendant's actions which constitute a clear violation of the Elliott Larsen Civil Rights Act, Plaintiffs have sustained extensive damages as herein before set forth and are entitled to proper and just recompense.

WHEREFORE Plaintiffs respectfully request this Honorable Court see fit to return a judgment in favor of Plaintiffs and against the Defendants individually and collectively in the amount of $10 million dollars along with all costs, interests and attorney fees afforded under the statutory scheme.

## COUNT III – LOSS OF CONSORTIUM

50. Plaintiffs hereby restate and reallege paragraphs 1-49 as though fully set forth herein.
51. Plaintiff Dianne Swanson was legally married to Plaintiff Swanson when the acts giving rise to Plaintiffs' Complaint arose.
52. That Plaintiff Dianne Swanson is entitled to an individual claim for damages secondary to her loss of consortium as a consequence of the negative impact on her marriage relationship with Plaintiff, O'Neil Swanson.

WHEREFORE Plaintiffs respectfully request this Honorable Court see fit to return a judgment in favor of Plaintiffs and against the Defendants individually and collectively in the amount of $10 million dollars along with all costs, interests and attorney fees afforded under the statutory scheme.

I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF


 /s/ O'Neil Depriest Swanson, II
**O'NEIL DEPRIEST SWANSON, II**
Dated: March 13, 2023

 /s/ Dianne Swanson
**DIANNE SWANSON**
Dated:  March 13, 2023

                                            Respectfully Submitted,

                                            THE LAW OFFICES OF GREGORY J. ROHL, P.C.

                                            ***/s/ Gregory J. Rohl***

Dated: March 13, 2023

                                            Gregory J. Rohl (P39185)
                                            *Attorney for Plaintiffs*
                                            4051 Haggerty Rd
                                            West Bloomfield, MI 48323
                                            (248) 380-9404